UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JOANN GANUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-CV-00098 JAR |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Joann Ganus's ("Ganus") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

**I.    Background**

Ganus has a medical history of hypothyroidism treated with thyroidectomy and medications, and hypocalcemia, treated with ongoing calcium medication. Ganus applied for disability insurance benefits and supplemental security income benefits on February 25, 2013, alleging disability as of February 24, 2013[2] resulting from frequent episodes of low calcium,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] During the administrative hearing, Ganus moved to amend her onset date from February 24, 2013 to March 1, 2013, which the ALJ granted (Tr. 41).

weakness, paresthesias[3], and muscular cramping. After her application was denied at the initial administrative level, she requested a hearing before an administrative law judge ("ALJ"). Following a hearing on January 28, 2015, the ALJ issued a written decision on March 6, 2015, denying her application. Ganus's request for review by the Appeals Council was denied. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II. Facts

The Court adopts Ganus's Statement of Facts (Doc. No. 22) and Defendant's Statement of Additional Material Facts (Doc. No. 23-2). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;

---

[3] A paresthesias is an abnormal sensation of tingling, numbness or burning, usually felt in the hands, feet, arms or legs. www.medical-dictionary.the freedictiionary.com/paresthesias (last visited July 19, 2017).

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). The severity of mental disorders is determined by rating the

3

claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (the "paragraph B criteria"). § 404.1520a(c)(3). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

IV.     **Decision of the ALJ**

The ALJ found Ganus had the severe impairments of hypocalcemia[4], hypoparathyroidism[5] – status post thyroidectomy, and mitral regurgitation[6], but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. After considering the entire record, the ALJ determined that Ganus had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except that she can only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but never ladders, ropes, or scaffolds. The ALJ found Ganus unable to perform her past relevant work as a cleaner, cook, bartender, and nurse assistant, but that considering her age, education, work experience and RFC, there are jobs that exist in

---

[4] Hypocalcemia (calcium deficiency disease) is caused by the loss of calcium from, or insufficient entry of, calcium into the circulation. Hypoparathyroidism is the most common cause of hypocalcemia. Hypocalcemia is easily treated with calcium supplements. www.clevelandclinicmeded.com (last visited July 18, 2017).

[5] Hypoparathyroidism is a condition in which the body does not make enough parathyroid hormone (PTH), a hormone that regulates the amount of calcium and phosphorus in the body's bones and blood. Symptoms include tingling in the lips, fingers, and toes; muscle cramps and pain in the face, hands, legs, and feet. Calcium carbonate and vitamin D supplements are the only currently approved treatments. www.medicinenet.com/hypoparathyroidism/article.htm (last visited July 18, 2017).

[6] Mitral valve regurgitation – also called mitral regurgitation – is a condition in which the heart's mitral valve does not close tightly, allowing blood to flow backward in the heart. As a result, blood does not move through the heart to the rest of the body as efficiently, making a person feel tired or out of breath. www.mayoclinic.org/diseases-conditions/mitral-valve-regurgitation (last visited July 18, 2017).

significant numbers in the national economy that she can perform, such as order clerk, service rater and telephone quotation clerk. Thus, the ALJ found Ganus was not disabled as defined by the Act.

V.      **Discussion**

In her appeal of the Commissioner's decision, Ganus challenges the ALJ's RFC determination. Specifically, Ganus argues that the ALJ did not include any sit-stand option, any restrictions on her ability to reach, handle, or finger, or any absences from work due to her chronic medical problems, and that instead of crediting the medical opinion of her treating physician, Tommy Wagner, M.D., the ALJ relied on state agency doctors who never examined her. (Doc. No. 14 at 12-17). The Commissioner responds that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as a whole, citing Chaney v. Colvin, 812 F.3d 672, 679 (8th Cir. 2016), and that the ALJ properly declined to afford Dr. Wagner's opinion controlling or substantial weight. (Doc. No. 23 at 4).

"An ALJ may discount or disregard a treating physician's opinion 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Lawson v. Colvin, 807 F.3d 962, 965 (8th Cir. 2015) (quoting Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014)); Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). In addition, "[a]n ALJ may give less weight to a conclusory or inconsistent opinion by a treating physician." Id. Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." Id. (citations omitted).

Dr. Wagner completed a Residual Functional Capacity Questionnaire on July 18, 2013 (Tr. 517-18). He diagnosed Ganus with hypothyroidism, neuropathy, muscle spasm, and tachycardia[7] and opined that her prognosis is poor. Dr. Wagner identified Ganus' symptoms as pain, weakness, fatigue, hypersomnia, and tachycardia, and reported that these symptoms frequently interfere with the attention and concentration required to perform simple work-related tasks. Side effects from Ganus' medications were noted as weakness, drowsiness, and tremors. According to Dr. Wagner, Ganus needs to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute morning and afternoon breaks and 30-60 minute lunch break. With respect to her functional limitations, Dr. Wagner estimated that Ganus can walk one block without rest or significant pain; sit for 20 minutes at one time; and stand/walk for 10 minutes at one time. Notably, he also estimated that Ganus can sit and stand/walk for 0 hours in an 8-hour workday. Dr. Wagner opined that Ganus needs a job that permits her to shift positions at will from sitting, standing, or walking, and to take unscheduled breaks every 1-2 hours for 15-20 minutes at a time before returning to work.

Dr. Wagner further opined that during a normal workday, Ganus could lift and carry less than 10 pounds occasionally and never lift and carry weight in excess of 10 pounds. She has limitations in repetitive reaching, handling, and fingering, i.e., she can grasp, turn, and twist objects (handling) for 5% of an 8-hour workday; perform fine manipulation (fingering) for 10% of an 8-hour workday; and reach with her arms (reaching) for 5% of an 8-hour workday; and would be absent from work three or four times per month due to her impairments or treatments. Dr. Wagner finds that Ganus' impairments are reasonably consistent with the symptoms and

---

[7] Tachycardia is a common heart rhythm disorder. Tachycardia is characterized by a rapid heart rate caused by a problem in the heart's electrical system. www.mayoclinic.org/diseases-conditions/tachycardia (last visited July 18, 2017).

functional limitations described in his evaluation and that she is not physically capable of working an 8-hour day, 5 days a week, on a sustained basis.

Upon review of the record and the ALJ's reasoning, the Court finds the ALJ provided good reasons for giving less than substantial or controlling weight to Dr. Wagner's opinions. The ALJ first noted that Dr. Wagner's limited course of treatment did not support his assessment (Tr. 26). Throughout the relevant period, Dr. Wagner's examination findings were normal. Treatment records from April and May 2013 show no observed limitations (Tr. 499-509). In July and October 2013, Dr. Wagner saw Ganus for medication refills and complaints of pain in her lower extremities, but noted no abnormalities on examination (Tr. 526-532). Ganus returned to Dr. Wagner in April 2014 with complaints of bone pain associated with low calcium. She received prescription refills and Dr. Wagner again noted no abnormalities on examination. (Tr. 642-44). During an office visit in May 2014, Ganus reported that she was pregnant. Dr. Wagner's findings were normal and Ganus was referred to perinatal services for idiopathic hypocalcemia. (Tr. 737-39). In March and June of 2015, Ganus saw Dr. Wagner for follow up appointments and prescription refills (Tr. 734; 746-49). Allegations of a disabling impairment may be properly discounted because of inconsistencies such as minimal or conservative medical treatment. Barrett v. Shalala, 38 F.3d 1019, 1023-24 (8th Cir. 1994).

Further, there is no evidence in Dr. Wagner's treatment records of neuropathy or muscle spasm, which he indicated contributed to Ganus' severe functional limitations in his medical source statement. Dr. Wagner also attributed Ganus' limitations to tachycardia, although he only assessed tachycardia once, apparently based on Ganus' self-report, as her pulse on examination was not significantly elevated (Tr. 508-09). The Eighth Circuit has upheld an ALJ's decision to discount a treating physician's medical source statement where the limitations listed on the form

"stand alone" and were never mentioned in the physician's numerous treatment records or supported by any objective testing or reasoning. Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) (quoting Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005)); see also Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

The ALJ also found that subsequent medical records, as well as Ganus' response to treatment, did not support Dr. Wagner's assessment (Tr. 26). For instance, a March 22, 2013 emergency room treatment for hypocalcemia and post-parathyroidectomy-related tingling and numbness in her lower extremities was unremarkable; Ganus was discharged the next day with no restrictions after receiving calcium and magnesium supplements (Tr. 461-69).

On April 24, 2013 and June 3, 2013, Ganus saw Peter A. Goulden, M.D., an endocrinologist, for help managing her low calcium and vitamin D levels (Tr. 535-72). By her June appointment, Dr. Goulden noted that Ganus' calcium level was significantly improved with changes in her dosage (Tr. 25, 535). At that time, his examination findings were normal (Tr. 539). The record does not show that Ganus ever contacted or returned to Dr. Goulden for additional medication management.

In October 2013, Ganus presented for emergency treatment of tingling in her hands and feet. She improved after being provided medication and was released with no restrictions. (Tr. 592-601). Ganus returned to the emergency room on April 9, 2014. Findings were unremarkable; she had full range of motion and peripheral pulses. She responded to calcium supplementation and was discharged as stable two days later. (Tr. 574-91). Records showing that Ganus' condition improved with and was amenable to treatment weigh against Dr. Wagner's opinion. An impairment that can be controlled by treatment or medication, or is amenable to treatment, is

not disabling. See Bernard v. Colvin, 774 F.3d 482, 488 (8th Cir. 2014); Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005); Qualls v. Apfel, 158 F.3d 425, 427 (8th Cir. 1998).

The ALJ further noted that Dr. Wagner's assessment of Ganus' sitting, standing, and walking limitations were internally inconsistent and inconsistent with Ganus' reported activities (Tr. 26; 277-288). Dr. Wagner indicated that Ganus could sit for 20 minutes at a time and stand/walk for 10 minutes at a time, but later in the same form indicated that she could not even sit or stand/walk for an hour total over the course of an 8-hour day (Tr. 517). In contrast, Ganus reported she left the house several times a day, drove, went shopping for one to two hours at a time, visited friends once or twice a month, and attended church twice a week without assistance (Tr. 280-81). Dr. Wagner indicated that Ganus had side-effects including weakness, drowsiness, and tremors, but Ganus denied any side-effects from her medication at the administrative hearing (Tr. 58). An ALJ may properly discount a treating physician's opinions when those opinions are inconsistent with a claimant's own testimony and reported activities. See Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015); Toland v. Colvin, 761 F.3d 931, 936 (8th Cir. 2014) (treating physician's opinion inconsistent with plaintiff's admitted daily activities); Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013).

The fact that the ALJ's decision does not identify the specific weight given to Dr. Wagner's opinion does not necessitate remand in this case as it is clear from the record that the ALJ considered Dr. Wagner's medical source statement of July 18, 2013, and gave those opinions some weight by limiting her to a restricted range of sedentary work. At best, Ganus has identified a deficiency in the ALJ's opinion-writing technique, and not a substantive error in his analysis or conclusions. See Welsh v. Colvin, No. 4:14 CV 1283 JMB, 2015 WL 4959285, at *18–19 (E.D. Mo. Aug. 19, 2015) (citing Dunbar v. Colvin, No. 1:13-CV-8 NAB, 2014 WL

319280, at *5 (E.D. Mo. 2014) (finding arguable deficiency in opinion-writing technique is not a sufficient reason to set aside an administrative finding where the deficiency has no practical effect on the outcome of the case when the ALJ did not explicitly provide the weight given to a doctor's opinion, because it was clear the ALJ gave some weight to the opinion)).

Ganus further argues that because the ALJ discounted Dr. Wagner's opinion, there was no medical evidence supporting the RFC such that the case should be remanded for further development of the record. Specifically, Ganus argues that the ALJ should recontact Dr. Wagner for clarification of her limitations in sitting, standing and walking, or alternatively, order a consultative examination. (Doc. No. l4 at 15-17). Although some medical evidence must support an RFC, Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016), it is not the only evidence an ALJ considers, see Masterson v. Barnhart, 363 F.3d 731, 737-38 (8th Cir. 2004) (noting that RFC is based on all the record evidence); Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (same). As for medical opinions in particular, there is no requirement that an RFC finding be supported by a specific medical opinion. Hensley, 829 F.3d at 932 (citing Myers v. Colvin, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); Perks v. Astrue, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)); see also Kinder v. Berryhill, No. 1:16CV7ACL, 2017 WL 1177707, at *7-8 (E.D. Mo. March 30, 2017).

As discussed above, the ALJ did not reject Dr. Wagner's opinions entirely, as evidenced by the fact that he limited Ganus to a restricted range of sedentary work. The ALJ also considered the views of the state-agency medical consultant, James Morgan, Ph.D., and gave them some weight (Tr. 26). Dr. Morgan conducted an independent review of the medical evidence and noted no limitations in basic work activity (Tr. 73-74). He rated Ganus' exertional limitations as follows: occasionally lifting and/or carrying 50 pounds; frequently lifting and/or

carrying 25 pounds; standing and/or walking about 6 hours in an 8-hour workday; sitting for a total of about 6 hours in an 8-hour workday; unlimited for pushing and/or pulling; and no manipulative limitations. (Id.) Taking all of this together with Dr. Goulden's treatment records showing improvement with treatment, the Court concludes there was substantial medical evidence of record to support the RFC. Thus, the ALJ had no obligation to obtain additional medical evidence. Buford v. Colvin, 824 F.3d 793, 797 (8th Cir. 2016) (ALJ is required to order further medical examinations only if existing medical record does not provide sufficient evidence to determine whether claimant is disabled); McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011) (same).

Moreover, "a lack of medical evidence to support a doctor's opinion does not equate to underdevelopment of the record as to a claimant's disability, as 'the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.'" Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (quoting Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007)). The ALJ discounted Dr. Wagner's opinion because it was inconsistent with other evidence, including his own treatment notes and Ganus' admitted daily activities; thus, the ALJ was not required to recontact him. Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006). "[C]ontacting a treating physician is necessary only if the doctor's records are "inadequate for us to determine whether [the claimant is] disabled" such as "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005) (quoting 20 C.F.R. §§ 404.1512(e), 416.912(e)).

**Conclusion**

For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 2nd day of August, 2017.

                                                **JOHN A. ROSS**
                                                **UNITED STATES DISTRICT JUDGE**